**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**Raymond D. KIRK, Respondent.**

No. 97–SC–132–KB.

Supreme Court of Kentucky.

April 24, 1997.

Bruce K. Davis, Executive Director, Dale Wright, Bar Counsel, Kentucky Bar Association, Frankfort, for Movant.

Raymond D. Kirk, Lexington, for Respondent.

## OPINION AND ORDER

Respondent, Raymond D. Kirk, was charged with three counts of violating various provisions of the Kentucky Rules of Professional Conduct. Specifically, the Inquiry Tribunal charged that respondent violated SCR 3.130–1.8(e) by providing financial assistance to a client in connection with pending litigation; that he violated SCR 3.130–1.2(a) by settling a client's personal injury claim without the client's permission; and with violation of SCR 3.130–8.3(b) by committing a criminal act which reflects adversely on his honesty and engaging in conduct involving dishonesty.

Respondent represented Ms. Susan Kemplin in a personal injury case. According to Ms. Kemplin, respondent advanced her sums of money in the neighborhood of two thousand ($2,000) dollars, to cover medical expenses and her costs of living. Respondent admits to having given Ms. Kemplin approximately two thousand ($2,000) dollars, but he claims that the monies came from her settlement and that he was merely parceling out that which was hers. The Board of Governors of the Kentucky Bar Association concluded that respondent either advanced his money to Ms. Kemplin or parceled out her own money to her. The Board found that under the facts of this case, either course of conduct constituted a violation. Either respondent improperly provided financial assistance to the client or he wrongfully withheld funds which belonged to her. The Board concluded from the evidence that by "settling" Ms. Kemplin's claim without her consent, he simultaneously improperly advanced funds to her and withheld funds to which she was justly entitled under the representation agreement.

With regard to settlement of Ms. Kemplin's case, on or about April 2, 1993, respondent received a settlement check and release documents from Kentucky Farm Bureau through its adjustor Louis Will. While Ms. Kemplin admitted that she and respondent had discussed settlement of her claim for the highest possible amount, she denied ever having authorized respondent to settle her claim. Respondent asserted that Ms. Kemplin did authorize him to settle her claim but that upon his receipt of the settlement check she refused to sign any release papers because she wanted more money. However, respondent failed to offer any documentary evidence which might confirm that a settle-

ment was authorized. Notably, respondent could produce no correspondence to Ms. Kemplin whereby he advised her of his plan to settle and the anticipated amount that would be received. He claimed his Kemplin file was stolen.

Whatever transpired with respect to settlement authorization, when respondent received the settlement check from Kentucky Farm Bureau, he endorsed the check by signing his own name and the title attorney and by signing her name without any indication that the signature was by anyone other than the named payee. On this point respondent testified as follows:

> But the truth is that I did sign Ms. Kemplin's name to this check. It probably was not the most prudent thing in the world to do, but she did authorize the settlement, and she did authorize the check, and she did receive approximately $2,000.00 from me. And she would have received all of the money, but she was not going to sign the release. And she appeared to have either gotten greedy, whatever I don't know. That is basically what happened.

From the foregoing testimony, there is no doubt that respondent forged the endorsement of the payee of a negotiable instrument without the consent of the named payee. Thereafter, he withheld the proceeds derived from the forgery of said payee's endorsement.

The Kentucky Bar Association Board of Governors found respondent to be guilty on all three counts and recommended to this Court that respondent be disbarred. We agree.

**IT IS THEREFORE ORDERED THAT:**

1. Respondent shall not be allowed to engage in the practice of law, as defined in SCR 3.020, in the Commonwealth of Kentucky until such time as this Court enters an order reinstating his membership in the Kentucky Bar Association.

2. Respondent shall not file an application for reinstatement until expiration of a period of five (5) years after the entry of this order.

3. Any application for reinstatement filed by respondent shall be governed by SCR 3.520, "Reinstatement in case of disbarment," or any subsequent amendment to SCR 3.520.

4. Respondent is directed to pay all costs of this action in the amount of $2,177.35.

5. Respondent shall comply with the provisions of SCR 3.390 by promptly notifying all courts in which he has matters pending and all clients for whom he is actively involved in litigation and other similar matters of his inability to continue to represent them, and of the necessity and urgency of promptly retaining new counsel. Such notification shall be by letter duly placed in the United States mail within ten (10) days of the entry of this order, and respondent shall simultaneously provide a copy of all such letters to the Director of the Kentucky Bar Association. Respondent shall promptly return all active files to his clients.

All concur.

ENTERED: April 24, 1997.

/s/ Robert F. Stephens
Chief Justice